**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| ROBERT D. BOOKER,              ) | |
|                               ) | |
|      Plaintiff,     ) | |
|                               ) | |
| vs.                           ) | No. 1:03-cv-366-DFH-TAB |
|                               ) | |
| LPN GOODRICH, et al.,         ) | |
|                               ) | |
|      Defendants.   ) | |

**Entry Discussing State Defendants' Motion for Summary Judgment**

Robert D. Booker ("Booker") was at all relevant times incarcerated at the Plainfield Correctional Facility ("PCF"). In addition to claims asserted against other defendants, Booker asserts claims against defendants Lt. Spangler, Lt. Gones, Christopher Askew, Omar Mirza, Unit Team Manager Grage, Sgt. Eads, Lt. Eads, and Nurse Sherri Neeley (the "State Defendants"). Booker alleges that the State Defendants violated his Eighth and Fourteenth Amendment rights by denying him proper medical care and pain medication, using excessive force, making threats against him, and conspiring against him by denying the use of a wheelchair. Booker seeks compensatory damages. The State Defendants seek resolution of Booker's claims through the entry of summary judgment.

For the reasons explained in this Entry, the State Defendants' motion for summary judgment, filed on December 6, 2004, must be **granted.**

**I. Summary Judgment Standard**

Rule 56(c) of the *Federal Rules of Civil Procedure* provides that a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.*

A party moving for summary judgment initially has the burden of showing the absence of any genuine issue of material fact in evidence of record. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970); *Schroeder v. Barth, Inc.,* 969 F.2d 421, 423 (7th Cir. 1992). If the moving party carries this burden, the opposing party then must "go beyond the pleadings" and present specific facts which show that a genuine issue exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); *Scherer v. Rockwell Int'l,* 975 F.2d 356, 360 (7th Cir. 1992).

Because the State Defendants seek the entry of summary judgment and because Booker is proceeding without counsel, the notice required by *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir. 1982) and Local Rule 56.1, was issued. Through this notice, Booker was notified of the nature of the defendants' motion, the proper manner in which to respond, and the consequences of failing to respond.

Through the court's Entry of December 9, 2004, the court directed Booker to respond to the State Defendants' motion for summary judgment no later than January 10, 2005. On January 12, 2005, Booker filed a "reply brief," responding to the merits of motions of summary judgment filed by defendants Goodrich and Schaefer. He did not respond to the arguments presented in the State Defendants' motion for summary judgment. Booker indicated that he had been in prison from October 22, 2004, until December 10, 2004, and that some mail received at his home may have been misplaced by family members. Booker was aware of the State Defendants' motion for summary judgment, if in no other way than by the court's Entry of December 9, 2004. Even if mismanagement of his household mail or an inopportune return to prison at a time when the motion was served prevented or delayed his receipt of the motion, the fact that he was on notice of the motion having been filed placed on him the responsibility of either acquiring a copy of the motion or risking the consequences of any failure to respond.

## II.  Undisputed Facts and Conclusions of Law

### A.  Undisputed Facts

On the basis of the pleadings and the expanded record, and specifically on the portions of that record which comply with the requirements of Rule 56(e), the following facts are undisputed:

At all relevant times, Booker was confined at the PCF. Sgt. David Johnston was employed by the Indiana Department of Correction as the Grievance Specialist at the PCF from December 1, 2002, through March 18, 2003. As the former Grievance Specialist of PCF, he ensured that offender grievances were filed and answered according to the guidelines set forth in Indiana Department of Correction ("IDOC") Administrative Procedure # 00-02-301.

According to IDOC Policy # 00-02-301, an offender must complete five steps in order to exhaust the grievance procedure. The first step is to file a complaint with the Grievance Specialist. The second step is to file a grievance with a Grievance Specialist. The third step is to file an appeal to the Grievance Committee. The fourth step is to file an appeal with the Superintendent of the facility. The fifth step is to appeal to the Regional Director.

This grievance program was in place during Booker's incarceration at PCF. Based on Sgt. Johnston's review of the offender grievance review and evaluation system that lists all grievances filed by offenders, Booker filed a number of grievances regarding the issues

alleged in his complaint between December 1, 2002, and March 18, 2003. Booker did not exhaust the five-step grievance procedure for any of these grievances.

In two of Booker's grievances, he grieved issues that are not grievable according to the grievance policy, IDOC Policy # 00-02-301. On December 12, 2002, Booker filed complaint #IYC-2002-12-165 regarding the allegedly inadequate pain medication he was receiving for his back. This complaint was not successfully pursued beyond Step 1 of the grievance process.

On December 14, 2002, Booker filed complaint #IYC-2002-12-168 alleging that his medical needs were not being evaluated by the proper medical personnel and he was, therefore, in unnecessary pain. This complaint was not successfully pursued beyond Step 1 of the grievance process. On December 15, 2002, Booker filed complaint #IYC-2002-12-169 alleging that medical personnel were displaying "prejudice, racism, and discrimination" against him by not qualifying his condition as a medical emergency or calling the doctor to discuss Booker's pain. This complaint was not pursued beyond Step 1 of the grievance process.

On December 19, 2002, Booker filed complaint #IYC-2002-12-219 complaining that he had not been seen by a doctor for his medical needs. This complaint was not pursued beyond Step 1 of the grievance process. On December 23, 2002, Booker filed complaint #IYC-2002-12-242 against PCF staff who allegedly made him sit in a hard chair, causing him to suffer additional back pain. This complaint was not pursued beyond Step 1 of the grievance process.

On December 24, 2002, Booker filed complaint #IYC-2002-12-245 against PCF medical staff who allegedly refused to give him adequate relief for his "crippling" pain. This complaint was not pursued beyond Step 1 of the grievance process.

On December 25, 2002, Booker filed complaint #IYC-2002-12-248 against the medical unit because they would not schedule him to see the doctor and were depriving him of "serious medical treatment." This complaint was not pursued beyond Step 1 of the grievance process.   On December 30, 2002, Booker filed complaint #IYC-2003-1-9 against medical staff for refusing to give him his medication. He alleged that the pain in his legs and back was so great that he could not walk to his cell door to collect his medication.  PCF staff told him that if he would not walk over to the counter and get his medication, he was essentially refusing it. This complaint was not pursued beyond Step 1 of the grievance process.

On December 31, 2002, Booker filed complaint #IYC-2003-1-11 complaining that he was not receiving proper medical care for his back pain. This complaint was not pursued beyond Step 1 of the grievance process.

On January 1, 2003, Booker filed complaint #IYC-2003-1-12 alleging that the pain in his legs and back was so great that he could not walk to medical for his appointment.

PCF staff told him that if he did not walk to medical to be evaluated, he was essentially refusing medical treatment. This complaint was not pursued beyond Step 1 of the grievance process. On January 1, 2003, Booker filed complaint #IYC-2003-1-13 alleging that he was in need of a handicapped cell. This complaint was not pursued beyond Step 1 of the grievance process.

On January 5, 2003, Booker filed complaint #IYC-2003-1-62 complaining that he was not receiving proper medical treatment or accommodations for the pain in his back and legs. This complaint was not pursued beyond Step 3 of the grievance process.

On January 10, 2003, Booker filed complaint #IYC-2003-1-91 alleging that PCF staff refused him the use of a wheelchair, and he was forced to crawl from his dentist appointment due to the pain in his back and legs. This complaint was not pursued beyond Step 3 of the grievance process.

On February 6, 2003, Booker filed complaint #IYC-2003-2-38 alleging that PCF staff made him sign a Refusal of Health Care Slip because he refused to walk to his medical appointment. Booker claims that he needed a wheelchair to transport him to his medical appointments. This complaint was not pursued beyond Step 2 of the grievance process.

On February 28, 2003, Booker filed complaint #IYC-2003-3-7 alleging that members of the medical staff were conspiring to use "excessive force, to cause [him] bodily harm." Because Booker requested to be moved to a new facility, this grievance became a classification issue, which is not grievable per IDOC policy. This complaint was denied and returned to Booker as non-grievable. He could have filed a classification appeal, but did not. Booker also could have revised this complaint to contain a grievable issue by removing his request to be transferred to a different facility, but did not.

On March 10, 2003, Booker filed complaint #IYC-2003-3-60 alleging that he should not have been placed in lock-up for his conduct. Booker claims that he needed a wheelchair, but PCF staff would not provide him with one. This complaint was denied and returned to Booker as non-grievable. This grievance was a disciplinary issue, which is not grievable per IDOC policy. Booker could have filed a disciplinary appeal, but did not. Booker also could have revised this complaint to contain a grievable issue by removing his request to review the disciplinary action, but did not.

### B.   Conclusions of Law

Booker alleges the following against each of the State Defendants:

Lt. Spangler deprived Booker of good time and had him "locked up" for seven days based on lies told by a nurse.

Lt. Gones, on February 6, 2003, threatened to place Booker in segregation if he did not sign a false document at sick call.

4

Christopher Askew, on January 10, 2003, denied him the use of a wheelchair when leaving the dentist's office, which forced Booker to crawl. On December 27, 2002, Askew also subjected Booker to excessive force when placing him in a wheelchair.

Omar Mirza, on December 27, 2002, subjected Booker to excessive force.

Unit Team Manager Grage refused to assist Booker in obtaining medical care.

Sgt. Eads, on March 10, 2003, prevented Booker from obtaining medical treatment.

Lt. Eads, on March 10, 2003, prevented Booker from obtaining medical treatment.

Nurse Sherri Neeley, Director of Nursing, failed to respond to Booker's requests for health care and allowed her nursing staff to deny or delay access to treatment.

The Prison Litigation Reform Act requires that a prisoner exhaust his administrative remedies before bringing a suit concerning prison conditions under § 1983. 42 U.S.C. § 1997e(a); *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). This requirement applies to the treatment alleged by Booker in his complaint. *Id.* at 532 (the exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). "In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). When applicable, the failure to exhaust available administrative remedies requires dismissal of a claim without reaching the merits. *Perez v. Wisconsin Dept. of Corrections,* 182 F.3d 532, 535 (7th Cir. 1999). The analysis which is to be undertaken in these circumstances is the following:

> [I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim . . . . [C]ourts merely need to ask whether the institution has an internal administrative grievance procedure by which prisoners can lodge complaints about prison conditions. If such an administrative process is in place, then § 1997e(a) requires inmates to exhaust those procedures before bringing a prison conditions claim.

*Massey v. Helman,* 196 F.3d 727, 733-34 (7th Cir. 1999).

As noted above, Booker has failed to respond to the State Defendants' argument that he failed to exhaust his administrative remedies. "'It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.'" *Sanders v. Village of Dixmoor,* 178 F.3d 869, 870 (7th Cir. 1999) (quoting *Liberles v. County of Cook,* 709 F.2d 1122, 1126 (7th Cir. 1983)). Booker has not met this burden here, nor has he attempted to do so. Thus,

the well-supported facts relied on by the defendants in support of their motion for summary judgment are accepted as true for the purpose of the court's resolution of the motion. *Corder v. Lucent Techs., Inc.,* 162 F.3d 924, 927 (7th Cir. 1998). The undisputed record shows that a prisoner grievance procedure was available at PCF but Booker did not pursue any of his grievances to the fifth and final step of that process. The State Defendants are therefore entitled to judgment as a matter of law.

### III. Conclusion

The State Defendants' motion for summary judgment, based on their argument that Booker failed to exhaust available administrative remedies prior to filing this action, must be **granted**. The dismissal of the action must be without prejudice. *Ford v. Johnson,* 362 F.3d 395, 401 (7th Cir. 2004) ("We therefore hold that *all* dismissals under § 1997e(a) should be without prejudice."). Final judgment consistent with this Entry and with the Entries granting summary judgment in favor of defendants Nurse Goodrich and Ronald Schaefer, M.D., shall now issue.

So ordered.

_David F. Hamilton_
DAVID F. HAMILTON, Judge
United States District Court

Date:   8/30/2005